## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| A.D., *et al.*,<br><br>    Plaintiffs,<br><br>        v.<br><br>DISTRICT OF COLUMBIA,<br><br>    Defendant. | Civil Action No. 20-cv-2765 (BAH)<br><br>Chief Judge Beryl A. Howell |

### MEMORANDUM OPINION

Plaintiffs, A.D., a special-education eligible student residing in the District of Columbia, and her parents, E.D. and C.D., are before this Court asserting their rights, under 20 U.S.C. § 1415(j), the "stay-put" provision of the Individuals with Disabilities Education Act ("IDEA").[1] They seek to maintain the student's current educational placement at The Lab School of Washington, *see* Pls.' Mot. Preliminary Inj. ("Pls.' Mot.") at 1, ECF No. 8, and tuition reimbursement retroactively to the start of the 2020–21 school year, *see* Pls.' Mem. Supp. Mot. Preliminary Inj. ("Pls.' Mem.") at 11, ECF No. 8, and prospectively "throughout the resolution of this appeal," Pls.' Reply Def.'s Opp'n Mot. Preliminary Inj. ("Pls.' Reply") at 6, ECF No. 11. The District of Columbia ("the District") opposes plaintiffs' request for stay-put relief.  *See* Def.'s Opp'n Pls.' Mot. Preliminary Inj. ("Def.'s Opp'n") at 1, ECF No. 10.  Upon consideration of the parties' arguments, plaintiffs' motion is granted.

---

[1]     The Individuals with Disabilities Education Improvement Act ("IDEIA") was enacted in 2004 to reauthorize the IDEA, *see* Pub. L. No. 108-446, 118 Stat. 2647 (Dec. 3, 2004) (effective July 1, 2005), but the short title continues to state that the law may be cited as the "Individuals with Disabilities Education Act," 20 U.S.C. § 1400(a), which is the reference used in this opinion.

I.      **BACKGROUND**

The facts surrounding the plaintiffs' three due process complaints culminating in the instant lawsuit and pending motion for a stay-put order are summarized below, followed by a brief review of the procedural history.

A.      **Factual Background**

A.D. is a fifteen-year-old, educationally disabled student who currently attends The Lab School, a full-time, private school in Washington, D.C.  *See* Compl. ¶¶ 4, 6, ECF No. 1.  From pre-Kindergarten through first grade, A.D. attended Hyde-Addison Elementary School ("Hyde-Addison"), a public school within the District of Columbia Public Schools system ("DCPS").  *Id.* ¶ 7.  While attending Hyde-Addison, A.D.'s parents requested academic and cognitive testing due to A.D.'s ongoing struggles with reading, writing, spelling, and her social interactions with peers, *id.* ¶¶ 7–8, but DCPS did not provide the requested testing nor any special education services to A.D., *id.* ¶ 8.

In August 2012, A.D. enrolled in another school, Creative Minds International Public Charter School ("Creative Minds"), for second grade, where she received an assessment "to determine her cognitive and academic functioning and any disabilities that might have been impacting those disabilities," *id.* ¶ 10.  Based on that assessment, Creative Minds' Individualized Education Program ("IEP") Team found A.D. eligible to receive special education services under the IDEA and developed an IEP.  *Id.* ¶ 11.  Over the following four years, however, A.D. failed to make "appropriate educational progress" while receiving "minimal services" at Creative Minds.  *Id.* ¶ 12.

In January 2016, A.D. underwent a psychoeducational evaluation, *id.* ¶ 13, which concluded that A.D. continued to have a "Specific Learning Disability [("SLD")] in the area of writing" and experienced "weaknesses in areas of attention control, working memory and

processing speed," *id.*  The evaluation was submitted to Creative Minds, *id.* ¶ 14, prompting the school to prepare a new IEP on February 10, 2016 ("2016 IEP"), to provide A.D. with "one hour per week of specialized instruction outside general education, 30 minutes per week for Behavioral Support Services ('BSS'), and 30 minutes per week of occupational therapy ('OT')." Def.'s Opp'n, Ex. 3, Hearing Officer Determination, September 8, 2020 ("September 2020 HOD") ¶ 3, ECF No. 10-3.

A.D.'s parents believed the 2016 IEP adopted by Creative Minds was an "inadequate educational program," Compl. ¶ 16, and thus initiated an administrative due process action. Since that time, litigation has been sporadically ongoing in this Court against the District over the sufficiency of this 2016 IEP and two subsequent IEPs issued by DCPS in December 2018 and November 2019, as described below.

### 1.    *July 27, 2018 Hearing Officer Determination on First Due Process Complaint*

Due to their dissatisfaction with the 2016 IEP, at the beginning of the 2016–17 school year, A.D.'s parents removed A.D. from Creative Minds and enrolled her at The Lab School, a "full-time, nonpublic school approved for special education placements in the District of Columbia for Children with learning disabilities, attentional, executive, and language disorders, and sensory-motor/sensory-integration needs" like A.D.  *Id.* ¶ 16–17.  Plaintiffs subsequently filed a due process complaint against Creative Minds for "failure to provide an appropriate IEP in February 2016 for the 2016–17 and 2017–18 school years," and sought tuition reimbursement for The Lab School for the 2016–17 and 2017–18 school years.  September 2020 HOD ¶ 5. [2] This complaint was resolved in a Hearing Officer Determination ("HOD") issued on July 27,

---

[2]         The complaint states that this due process complaint was filed on January 3, 2018, Compl. ¶ 21, while the September 2020 HOD indicates that this due process complaint was filed on May 4, 2018, September 2020 HOD ¶ 5.  This date discrepancy is immaterial to resolution of the pending motion.

2018 ("July 2018 HOD").  Pls.' Mem., Ex. 1, July 2018 HOD, ECF No. 8-1.  Specifically, the

July 2018 HOD determined that the Creative Minds "denied the Student educational benefit, and

therefore a [free appropriate public education ("FAPE")], through its IEP dated February, 2016,"

July 2018 HOD at 16, but nevertheless did not provide for all of the relief requested.  Plaintiffs

were granted reimbursement for only one-half of The Lab School tuition for the 2016–17 school

year, rather than the requested reimbursement for that entire school year as well as the 2017–18

school year.  *Id.* at 23.  The July 2018 HOD denied reimbursement for the 2017–18 school year

because DCPS, not Creative Minds, was A.D.'s local education agency ("LEA") for that school

year, *see* July 2018 HOD at 18, 23, and reduced the reimbursement award for 2016–17 by half

because "[p]laintiffs failed to provide Creative Minds proper notice under 20 U.S.C. §

1412(a)(10)(C)(iii)," *A.D. v. Creative Minds Int'l Public Charter School*, Civil Action No. 18-

cv-2430 (CRC) (DAR), 2020 U.S. Dist. LEXIS 184173 at *8–9 (D.D.C. Sept. 28, 2020); July

2018 HOD at 22.

Plaintiffs appealed the July 2018 HOD findings, and on September 28, 2020, another

Judge on this Court adopted, over Creative Minds' objections, the Magistrate Judge's Report and

Recommendation, finding that: (1) the February 2016 IEP was inadequate under the IDEA, *A.D.*

*v. Creative Minds Int'l Public Charter School*, 2020 U.S. Dist. LEXIS 184173 at *13; and (2)

plaintiffs complied with the notice provisions of the IDEA and were thereby entitled to full

tuition reimbursement, *id.* at *17.  Creative Minds was ordered to pay the tuition reimbursement

for the full 2016–17 school year.  *Id*. at *23.

During the summer of 2018, A.D.'s parents enrolled her as a student in DCPS to begin

the special education eligibility process.  Compl. ¶ 24.  A variety of diagnostic tests were

administered to A.D., September 2020 HOD ¶¶ 6–8; Compl. ¶ 25–32, resulting in the November

4

28, 2018 DCPS determination that A.D. "remained eligible for special education and related services with a classification of [multiple disabilities] for SLD and Other Health Impairment ('OHI')," September 2020 HOD ¶ 9. A new, third IEP was prepared by DCPS, on December 5, 2018, that provided for five hours per week of specialized instruction outside general education, ten hours per week of specialized instruction in general education, two hours per month of BSS and two hours per year of OT consultation services. *Id.* ¶ 10. Shortly thereafter, however, on February 12, 2019, The Lab School prepared an IEP for A.D. ("February 2019 IEP"), prescribing thirty-two hours per week of specialized instruction, three hours per month of individual psychological services from a clinical psychologist, and three hours per month of group psychological services, along with specific, measurable learning objectives. *Id.* ¶ 11.

### 2. *August 5, 2019 Hearing Officer Decision on Second Due Process Complaint*

Plaintiffs filed a second Due Process Complaint on April 22, 2019 challenging the December 2018 IEP and alleging that (1) the District failed to provide an appropriate IEP and placement for the 2018–19 school year, citing the lack of full-time specialized instruction or placement in appropriate outside programs, and inappropriate building and class size, noise levels, pace of instruction, instructional presentation method and level of staffing, and (2) The Lab School was an appropriate placement for the student. *Id.* ¶ 12. The Hearing Officer Decision issued on August 5, 2019 ("August 2019 HOD"), again, found in plaintiffs' favor, concluding that the District had not met its burden of persuading that five hours per week of specialized instruction outside general education and ten hours per week of specialized instruction within general education were "reasonably calculated to enable [A.D.] to make appropriate progress in [A.D.'s] circumstances," and that The Lab School is "proper and appropriate for [A.D.]." *Id.* ¶ 12. Consistent with these findings, DCPS was ordered to

reimburse plaintiffs for tuition and related services at The Lab School "for the entire 2018–19 school year, for the first half of the 2019–20 school year, and 'until a FAPE is offered by DCPS.'" *Id.* (quoting August 2019 HOD at 21).

Notably, an HOD ordering tuition reimbursement at a non-public school is considered an "agreement" for "stay-put" purposes.  34 C.F.R. § 300.518(d) ("If a hearing officer in a due process hearing . . . agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State and the parents").  The August 2019 HOD reflects A.D.'s last agreed-upon placement.

Pursuant to the August 2019 HOD, A.D. began ninth grade at The Lab School for the 2019–20 school year funded by DCPS.  Compl. ¶ 51.  A new, fourth IEP issued by DCPS on November 25, 2019 ("November 2019 IEP") prescribed twenty hours per week of specialized instruction outside general education, three hours per month of BSS, two hours per month of OT services, and thirty minutes per month of OT consultation services.  September 2020 HOD ¶ 14. This amounted to more services than set out in the December 2018 IEP, but fewer services than A.D. was receiving at The Lab School under the February 2019 IEP.  DCPS recommended A.D.'s placement for implementation of the November 2019 IEP at A.D.'s neighborhood school, Roosevelt High School, a public high school in Northwest Washington, D.C.  Compl. ¶ 61.

Plaintiffs rejected the November 2019 IEP as written, *id.* ¶ 60, and disagreed with this IEP's prescription of only twenty hours of specialized education outside of general education, September 2020 HOD ¶ 15.  A.D.'s mother also visited Roosevelt High School, on December 18, 2019, to "gauge its feasibility for [A.D.'s] placement," but quickly concluded that the school was inappropriate for A.D. because of the limited services offered by DCPS, the limited services

available at the school itself, the restrictions on electronic devices in the school, and also the size

and noise level of the school.  *Id.* ¶ 16; Compl. ¶ 66.

### 3.   *September 8, 2020 Hearing Officer Decision on Third Due Process Complaint, Which Decision is At Issue in Instant Lawsuit*

Plaintiffs filed a third Due Process Complaint, submitted initially on January 28, 2020,

Compl. ¶ 71, and later withdrawn and refiled on May 5, 2020, as a result of witness

unavailability and the national COVID-19 pandemic, *id.* ¶ 72, seeking "(1) an order maintaining

[A.D.'s placement at The Lab School] through the 2020–21 school year, [and] (2) reimbursement

for occupational therapy services at [The Lab School] during the 2019–20 school year,"

September 2020 HOD at 20.  A hearing officer determination issued on September 8, 2020

denied this complaint in full, finding that the November 2019 IEP provided A.D. "an appropriate

program and placement."  *Id.*  Although conceding that The Lab School "is an appropriate

placement" for A.D, *id.*, plaintiffs' requested relief of maintaining A.D.'s placement at The Lab

School through the 2020–21 school year and reimbursement for occupational therapy services at

The Lab School during the 2019–20 school year was denied, *id.*

Plaintiffs appealed the September 2020 HOD to this Court in the instant lawsuit, Compl.

¶¶ 3, 79–96, alleging that DCPS failed to provide A.D. with the requisite FAPE and that this

most recent HOD "compounded [this] violation[]" by "ignor[ing] the parents' compelling

evidence and witnesses, misapplied controlling law, and denied the requested relief," *id.* ¶ 1.

### B.   Procedural History

Plaintiffs filed the pending motion for injunctive relief on December 16, 2020, seeking an

injunction, pursuant to A.D.'s stay-put rights, under 20 U.S.C. § 1415(j), requiring the District to

"fund," Pls. Mot. at 1, and "maintain A.D. in her current educational placement at The Lab

School, retroactive to the start of the 2020-21 school year, including transportation and related

services, and continuously thereafter until the completion of the pending appeal," Pls.' Mem. at

11–12.  In accordance with the schedule proposed by the parties and adopted by the Court, this

motion became ripe for review on January 15, 2021.

## II.   LEGAL STANDARD

Section 1415(j) of the IDEA states that, except in certain circumstances inapplicable here,

"during the pendency of any proceedings conducted pursuant to this section, unless the State or

local educational agency and the parents otherwise agree, the child shall remain in the then-

current educational placement of the child."  20 U.S.C. § 1415(j).  This so-called "stay-put"

provision is among the "various procedural safeguards" established by the IDEA to "guarantee

parents both an opportunity for meaningful input into all decisions affecting their child's

education and the right to seek review of any decisions they think inappropriate."  *Honig v.*

*Doe,* 484 U.S. 305, 311–12 (1988).  The "unequivocal" language of this provision shows "that

Congress very much meant to strip schools of the *unilateral* authority they had traditionally

employed to exclude disabled students," pending completion of the review proceedings.  *Id.* at

323 (emphasis in original).  Thus, the stay put provision "creates a powerful statutory

presumption in favor of maintaining the current classroom placement of a student with a

disability when the school seeks to change his placement over a parent's objections," such that

"[t]he local educational agency must overcome a heavy evidentiary burden to displace the

default rule that the child will stay put."  *Olu-Cole v. E.L. Haynes Pub. Charter Sch.*, 930 F.3d

519, 522 (D.C. Cir. 2019).

The traditional four-part test for a preliminary injunction does not apply in evaluating

requests for injunctive relief under the stay-put provision, which "turns that traditional

framework on its head."  *Id.* at 527; *see also Andersen by Andersen v. District of Columbia,* 877

F.2d 1018, 1023–24 (D.C. Cir. 1989) (noting that "if the [stay-put] provision applies, injunctive relief is available without the traditional showing of irreparable harm").  Instead, the stay-put provision "effectively provides for an automatic statutory injunction upon a two-factor showing that (i) an administrative due process proceeding is 'pend[ing],' and (ii) the local educational agency is attempting to alter the student's 'then-current educational placement.'"  *Olu-Cole,* 930 F.3d at 527 (quoting 20 U.S.C. § 1415(j)).  Upon meeting this two-part inquiry, the student is presumptively entitled to a stay-put injunction in favor of the student's current placement, and "the burden rests with the school district to demonstrate that the educational status quo must be altered."  *Id.* (*quoting Honig*, 484 U.S. at 328 n. 10).  As the D.C. Circuit has summed up the operation of the stay-put provision, "[t]aking it down to brass tacks," upon demonstration that the two statutorily required factors are met, "[s]tay put lock[s] in [the student]'s educational status quo, and the party that need[s] injunctive relief [is] the School seeking to derail the statute's ordinary operation."  *Id*. at 528.

## III.   DISCUSSION

The parties agree that the first prong of the two-factor test for application of the stay-put presumption is met since plaintiffs' appeal of the September 2020 HOD to this Court is pending.  *See* Pls.' Mem. at 3; Def.'s Opp'n at 2, ECF No. 10.  The parties dispute whether the second factor is met.  In particular, the District argues that The Lab School is not A.D.'s stay-put placement, *id.* at 4, and further contends that maintaining A.D. at The Lab School would cause harm to the District, due to the expenditure of tuition on A.D.'s behalf, and would circumvent the IDEA appeal process, *id.* at 5. As the analysis that follows demonstrates, The Lab School constitutes A.D.'s "then-current educational placement" for purposes of the stay-put injunction,

and the District's protestations of harm do not overcome the statutory requirement that A.D. is entitled to the relief requested here.

### A.    Student's Current Private School Placement Is The "Then-Current Educational Placement" For Purposes of The Stay-Put Provision

The last educational placement for A.D. upon which plaintiffs and the District agreed is set out in the August 2019 HOD, which agreed with plaintiffs that The Lab School, where A.D. has now been enrolled for four years, *see* Pls.' Mem. at 4, was an appropriate educational placement, *see* August 2019 HOD at 18.  Such an order amounts to an "agreement" for "stay-put" purposes.  *See District of Columbia v. Vinyard*, 901 F. Supp. 2d 77, 85–86 (D.D.C. 2012); *Sch. Comm. of Town of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 372 (1985) (confirming that an HOD constitutes an "agreement" as to an appropriate placement of a child); *see also Susquenita Sch. Dist. v. Raelee S.*, 96 F.3d 78, 83–87 (3d Cir. 1996); *Sudbury Public Sch. v. Mass. Dep't of Elementary and Secondary Educ.*, 762 F. Supp. 2d 254, 268 (D. Mass. 2010).  The August 2019 HOD finding that The Lab School "is proper and appropriate for" A.D., August 2019 HOD at 17–18, is only bolstered by the September 2020 HOD, which found that A.D.'s "steady progress over the past four years at the Lab School indicates that it is an appropriate placement for" the student, September 2020 HOD at 20.  Consequently, according to plaintiffs, The Lab School is the "then-current educational placement" for the purposes of § 1415(j).  Pls.' Mem. at 7–8.  Plaintiffs are correct.

To satisfy the second factor in the two-part test for stay-put relief, a student must show that the school system "is attempting to alter the student's 'then-current educational placement,'" *Olu-Cole,* 930 F.3d at 527 (quoting 20 U.S.C. § 1415(j)), by proposing a "fundamental change in, or elimination of, a basic element of the educational program," *Lunceford v. District of Columbia Bd. of Educ.*, 745 F.2d 1577, 1582 (D.C. Cir. 1984).  *See also K.W. v. District of*

*Columbia*, 385 F. Supp. 3d 29, 43 (D.D.C. 2019); *Douglas v. District of Columbia*, 4 F. Supp. 3d 1, 2–3 (D.D.C. 2013); *Vinyard*, 901 F. Supp. 2d at 83 (D.D.C. 2012).  This factor is easily met here.

The challenged November 2019 IEP and proposed placement at issue in the underlying appeal in this case would result not only in a change of location in the provision of educational services to A.D. from The Lab School to the public school Roosevelt High School, but also a change in the educational services provided.  In comparison to A.D.'s current educational program, the challenged IEP would reduce by twelve hours per week A.D.'s specialized instruction outside of general education, September 2020 HOD ¶ 14, and eliminate both her individual and group psychological services, *id*.  Meanwhile, A.D.'s existing February 2019 IEP, which is being implemented by The Lab School, was in place for the duration of the last year and at the time the instant motion was filed.  As such, the February 2019 IEP was the "actually functioning" IEP when the stay-put relief was invoked, a consideration deemed "dispositive" in identifying the "then-current" placement.  *Vinyard*, 901 F. Supp. 2d at 79 ("Typically, the dispositive factor in deciding a child's current educational placement should be the individualized education program actually functioning when the stay-put is invoked." (citation omitted)).

For all of these reasons, The Lab School is A.D.'s "then-current educational placement." *See N.W. v. District of Columbia*, 253 F. Supp. 3d 5, 20–21 (D.D.C. 2017) (holding that "prior administrative determination," which ordered District to pay student's tuition at private school "thus represent[ed] an administrative determination that [private school] was appropriate" and private school remains student's "current educational placement" pending appeal of subsequent administrative determination, such that District is obliged to pay for student's attendance at

private school "through the resolution of this case"); *Eley v. District of Columbia.*, 47 F. Supp. 3d 1, 17 (D.D.C. 2014) (holding that school attended by student during controversy over the student's most-recent IEP was student's then-current educational placement); *Vinyard*, 901 F. Supp. 2d at 79–80 (finding that "Lab School of Washington to be [student]'s current educational placement for stay-put purposes" and therefore "directing the District to maintain and fund [student]'s placement at the Lab School pending a judicial determination on the merits"); *accord District of Columbia v. Jeppsen*, 468 F. Supp. 2d 107, 111–12 (D.D.C. 2006) ("requiring parents to reimburse school districts for tuition and other expenses paid to private schools under the stay-put provision is wholly inconsistent with the intent and spirit of the provision itself."), *reversed in part and remanded on different grounds,* 514 F.3d 1287, 1288 (D.C. Cir. 2008).

The District raises three arguments disputing the conclusion that The Lab School is A.D.'s "then-current educational placement" under the stay-put provision, but none are persuasive.  First, the District points to the fact that the August 2019 HOD granted tuition reimbursement only for the first half of the 2019–20 school year, rather than the entire school year, and that this partial reimbursement is indicative of an interim placement, disqualifying plaintiffs from obtaining stay-put relief at The Lab School.  Def.'s Opp'n at 4–5 (noting DCPS was required to "fund A.D.'s placement at Lab for the first semester of the 2019–2020 school year *only*.") (emphasis in original).  The District reasons that, even if the last agreed-upon placement for A.D. is The Lab School, by expressly denying to extend A.D.'s placement through the second semester of the 2019–20 school year, the August 2019 HOD put plaintiffs "on notice that A.D.'s placement at Lab was temporary and that A.D. could attend a different school if DCPS provided an appropriate IEP and placement."  *Id.* at 5.  This reasoning is unmoored from

the actual explanation provided in the August 2019 HOD for the denial of reimbursement for the full 2019–20 school year.

The August 2019 HOD explains that plaintiffs' request for reimbursement for the entire 2019–20 school year "received virtually no attention during the due process hearing," "there was no discussion of placement and Student's options with DCPS for 2019/20," and "DCPS did not suggest any placement or school for Student for 2019/20." August 2019 HOD at 19. Since, however, DCPS was ordered to prepare a new IEP promptly, the tuition reimbursement was limited to "the first half of the school year to enable DCPS to attempt to provide a FAPE to Student beginning in January 2020, if desired." *Id.* at 20. Thus, the HOD's limitation on tuition reimbursement to only the first half of the 2019–20 school year was in anticipation of the preparation of an IEP that ensured A.D. a FAPE for the remainder of the school year.

In compliance with the August 2019 HOD, DCPS prepared the November 2019 IEP and proposed placement of A.D. at Roosevelt High School, but both are challenged as failing to provide a FAPE. Revoking tuition reimbursement now during the pendency of this litigation, would result in A.D.'s placement being transferred to DCPS's current choice of Roosevelt High School for implementation of the November 2019 IEP, even if the changes proposed in that last IEP are ultimately found in this litigation to be inappropriate and inadequate, undermining the very purpose of the stay-put provision to allow parents an opportunity to test the legality of a disputed educational change and placement before implementation.

The District has unsuccessfully tried out before this same argument that "the underlying determination from which [the student] appeal[ed]" limited prospective relief so "[the District] should not be required to fund" the following school year. *District of Columbia v. Oliver*, 991 F. Supp. 2d 209, 216 (D.D.C. 2013). That reading of the stay-put provision was rejected. *Id.*

Citing DCPS' failure to develop an appropriate IEP as required by the HOD, the *Oliver* Court explained that the District could not "interpret the structure of the HOD's order as limited to placing the child at her private school only for the then-current school year and absolving the [District] of any responsibility to provide a placement in future years." *Id*.  Similarly, in other cases, where the HOD ordering the "then-current educational placement" did not provide full tuition reimbursement, courts have not hesitated to grant stay-put relief.  *See, e.g., Wimbish v. District of Columbia*, 153 F. Supp. 3d 4, 12–13 (D.D.C. 2015) (granting plaintiffs' stay put injunctive relief and requiring District to "fund 100% of Plaintiffs' cost of attendance at [private school] until the conclusion of these proceedings," even though HOD ordering placement at private school required only 50% tuition reimbursement by District for earlier school year).

In asserting the position that The Lab School cannot be A.D.'s stay-put placement, the District relies solely on *Simmons v. District of Columbia*, 355 F. Supp. 2d 12 (D.D.C. 2004), a non-binding case that is also inapposite.  The procedural posture of *Simmons* differs in several material respects from the pending motion for a stay-put order.  First, the child at issue in *Simmons* had been parentally-placed at a private school but, unlike here, that private school placement was never agreed-upon with the District.  *Id*. at 14–15.  Second, unlike here, the only IEP available for the *Simmons* child was the challenged IEP since this was the "first and only educational placement" for the child.  *Id*. at 17.  Indeed, even the *Simmons* court acknowledged the significance of this distinction, noting the "contrast to other decisions in this district declining to find that the 'current educational placement' is the school specified in the challenged IEP where there is a pre-existing IEP."  *Id*. at 17.  Finally, after the challenged HOD was issued finding that the challenged IEP and public school placement were appropriate, the parents filed a due process complaint but, unlike here, "did not invoke the 'stay put' provision."  *Id*. at 15.

Instead, the parents asserted in their appeal of the HOD that offering a public school placement, rather than allowing her to stay put in the private school, "denied her a [FAPE]," *id*.; *id*. at 16, "in failing to fund her enrollment at [the private school] during the pendency of this action," *id*. at 17.   On summary judgment, the court sustained the HOD and the appropriateness of the challenged IEP and public school placement, *id*. at 19, findings that undergird the conclusion that "there was no denial of FAPE through maintenance of that [IEP] placement …during the pendency of this action," *id*. at 17.   *Simmons* simply does not help the District here.

Second, the District contends that The Lab School does not qualify as A.D.'s current educational placement because "A.D. was placed at Lab by [p]laintiffs."  Def.'s Opp'n at 4. Section 1415(j) provides no definition for the key term "then-current educational placement" or "educational placement," but states only that "during the pendency of any proceedings," the child may "remain in the then-current educational placement . . . ," 20 U.S.C. 1415(j).  Thus, the plain text imposes no qualifier about who chose that placement and does not support the District's argument.  The statutory provision expresses Congress' "intention to preserve the *status quo* by referring to the placement in which the child is actually receiving educational services at the time the dispute first arises."  *Oliver*, 991 F. Supp. 2d at 214; *see also Murphy v. Bd. of Educ.*, 86 F. Supp. 2d 354, 359 (S.D.N.Y. 2000), *aff'd*, 297 F.3d 195 (2d Cir. 2002) (finding "then current placement" to mean the last agreed upon placement when the due process proceeding commenced).  At the time this dispute arose, in January 2020, A.D. was "actually receiving educational services" at The Lab School, per the agreement reflected in the August 2019 HOD.

Relatedly, the District urges denial of the requested stay-put order because plaintiffs' initial placement of A.D. at The Lab School and subsequent rejection of the November 2019 IEP

constitutes a "unilateral placement" for which plaintiffs must bear financial responsibility.
Def.'s Opp'n at 5–6.  This argument ignores the impact of the August 2019 HOD.  "While
parents who reject a proposed IEP bear the initial expenses of a unilateral placement, the school
district's financial responsibility should begin where there is an administrative or judicial
decision vindicating the parents' position."  *Susquenita*, 96 F.3d at 86–87.  Here, A.D.'s parents
have borne the "initial expenses" already.  Plaintiffs assumed the initial cost for The Lab School
in both the 2016–17 and the 2017–18 school years, and were later reimbursed by Creative Minds
for the 2016–17 school year, *see A.D. v. Creative Minds Int'l Public Charter School*, 2020 U.S.
Dist. LEXIS 184173 at *23–24, and by DCPS for the 2018–19 school year and prospectively for
the first half of the 2019–20 school year, *see* August 2019 HOD at 21.  To date, therefore, A.D.'s
parents have assumed the costs of The Lab School for 2017–18 school year and from January
2020 to the present.[3]  The finding in the August 2019 HOD that The Lab School was an
appropriate placement for A.D., however, constitutes an "agreement" on her placement and
converts The Lab School from a unilateral placement, for which A.D.'s parents bore the "initial
expenses," to an agreed-upon placement, for purposes of the stay-put provision.  Put plainly, the
August 2019 HOD is the "administrative . . . decision vindicating" plaintiffs' position and is
where the District's "financial responsibility should begin . . . ."  *Susequenita*, 96 F.3d at 86.  *See
also Oliver*, 991 F. Supp. 2d at 214, 216 (holding  that a child "parentally-placed" in a private
school and later subject to an HOD ordering the District "to fund the child's education at [the

---

[3]      Plaintiffs were denied reimbursement for the 2017–18 school year in the July 2018 HOD, *see* July 2018
HOD at 18, 19, 23, which decision was affirmed on appeal, *see* Report and Recommendation, *A.D. v. Creative
Minds Int'l Public Charter School*, Civil Action No. 18-2430 CRC/DAR, 2020 U.S. Dist. LEXIS 184957 at *71–73,
*75 (D.D.C. Aug. 14, 2020), because DCPS, not Creative Minds or the Office of the State Superintendent of
Education ("OSSE"), which plaintiffs named as respondents in the July 2018 HOD, was the LEA obligated to
provide A.D. with a FAPE during that school year, *id.*

private school] for the remainder of the . . . school year," established the child's educational placement as the school in which she was enrolled at the time).

Finally, contrary to the District's position, *see* Def.'s Opp'n at 4–5, A.D.'s placement at a private school does not disqualify her from the stay-put procedural safeguard. This statutory protection can extend to students "not 'enrolled in a public school.'" *Oliver*, 991 F. Supp. 2d at 215 (quoting *Vinyard*, 901 F. Supp. 2d at 82); *see also id.* at 216 (asserting that "[a] hearing officer's determination that a given placement is appropriate is sufficient to render that placement a 'current educational placement' for the purposes of the stay-put provision" (citing *F.S. ex rel. Snyderman v. District of Columbia*, No. 06-923, 2007 U.S. Dist. LEXIS 27520, at *4 (D.D.C. Apr. 13, 2007))). In *Vinyard*, for example, a student was found to be entitled to a stay-put order requiring the District to maintain his placement at The Lab School pending appeal of an HOD that directed the District to maintain and fund the student's private placement. *Vinyard*, 901 F. Supp. 2d at 79. There, the HOD's "unequivocal holding in favor" of the student's placement at The Lab School was found to "constitute an agreement as to [the student's] current educational placement for the limited purpose of stay-put relief," *id.* at 86, and entitled the student to such relief "funded by the District, immediately, and retroactive" to the beginning of the school year, *id.* at 91.

Accordingly, A.D. is entitled to automatic stay-put protection at The Lab School pending plaintiffs' appeal challenging the September 2020 HOD and proposed placement, with tuition reimbursement by DCPS during the pendency of this appeal.

## B.  District's Objections Fail to Demonstrate That Stay-Put Status Quo Must Be Altered

Upon satisfying the two-factor test triggering the automatic stay-put protection, "the burden shift[s] to the School to meet the heavy burden of overcoming that presumption" and

"shoulder[ing] the difficult burden of justifying" an alteration in the status quo. *Olu-Cole*, 930 F.3d at 528. To meet this "heavy burden," the District contends that maintaining A.D.'s current placement at a private school would "cause harm to the District" and allow plaintiffs to "circumvent the IDEA appeal Process," Def.'s Opp'n at 5, by ordering the District "to fund A.D.'s enrollment at [The Lab School] on a supposedly emergency basis," *id.* at 7, rather than "allow[ing] the appeal process to run its course and await a ruling from the Court on the merits of [plaintiffs'] claim challenging the appropriateness of the IEP and placement," *id.* These justifications for denying stay-put relief only highlight a misapprehension of the applicable law and amount to urging this Court simply to ignore the mandates of the stay-put provision.

Contrary to the District's characterization, invoking statutory stay-put relief does not "circumvent" the IDEA appellate process, but rather minimizes harm to the student while litigation proceeds over the merits of the educational services proposed by the District. The District posits that the stay-put injunction should be denied because if ordered "to fund A.D.'s unilateral enrollment at Lab, Plaintiffs would be free to withdraw their complaint and DCPS would be forced to fund Lab with no legal recourse," Def.'s Opp'n at 7, since "the appropriateness of the IEP and placement would not have been determined [and] yet Plaintiffs would have received all the relief they seek, which is precisely the relief that the hearing officer rejected," *id.* Plainly, if plaintiffs were to withdraw their appeal, the stay-put protection "pending appeal" would necessarily end. The fact that stay-put relief maintains the *status quo* placement for a student, until the parties agree otherwise and/or the student withdraws a challenge to the District's proposal, is a facet of the operation of the statute and simply does not amount to a justification for judicially altering the statutory mandate. Tuition at The Lab School is indisputably expensive. Yet, the harm to the District from footing this tuition expense does

not justify denial of an otherwise requisite stay-put injunction, since the IDEA "expressly affords

such a remedy to the aggrieved student." *Vinyard*, 901 F. Supp. 2d at 89 (quoting *Ravenswood*

*City Sch. Dist. v. J.S.*, Case No. C 10-03950 SBA, 2010 U.S. Dist. LEXIS 126629, at *5 (N.D.

Cal. Nov. 18, 2010)).[4]

      The District has fallen far short of overcoming the applicable presumption for issuance of

a stay-put order.

## IV.    CONCLUSION

      For the foregoing reasons, the plaintiffs' Motion for Preliminary Injunction, ECF No. 8,

is granted.  An appropriate Order accompanies this Memorandum Opinion.


Date: February 2, 2021               _____

                                       BERYL A. HOWELL
                                       Chief Judge

---

[4]    Moreover, the District's express concern that plaintiffs are circumventing an appeals process for the August 2019 HOD through this stay-put injunction by seeking the same full 2019–20 school year reimbursement denied by the August 2019 HOD is flatly incorrect.  *See* Def.'s Opp'n at 5; *see also* August 2019 HOD at 21 (granting plaintiffs reimbursement "for the first half of the 2019/20 school year and until a FAPE is offered by DCPS").  Plaintiffs seek only an order that the District "maintain A.D. in her current educational placement at [The] Lab School, retroactive to the start of the 2020–21 school year," during the pendency of the appeal.  Pls.' Mem. at 11–12; Pls.' Reply at 5–6.